UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE FEDERAL RULE OF CRIMINAL PROCEDURE 17(c) SUBPOENAS ISSUED UPON THE CITY OF ATLANTA AND THE ATLANTA POLICE DEPARTMENT IN CONNECTION WITH CASE NO 1:20-CR-0351 | )<br>)<br>)<br>)    Misc. No. _____<br>)<br>)<br>)<br>)<br>) |

**BRIEF IN SUPPORT OF MOTION TO QUASH
DEFENDANT'S RULE 17(c) SUBPOENAS DIRECTED TO
CITY OF ATLANTA AND ATLANTA POLICE DEPARTMENT**

## I.   INTRODUCTION

This Court granted Defendant Jimmy Anthony Beard's request for the issuance of Rule 17(c) subpoenas directed to the City of Atlanta (the "City") and the Atlanta Police Department (the "APD")[1] on January 7, 2022 (the City and APD, together, "Movants"). Dkt. No. 44. Two subpoenas followed from that Order, one to the City of Atlanta, purportedly transmitted to the City on or around February 3, 2022 (the "City Subpoena"), and one transmitted to the APD on August 22, 2022

---

[1] Of note, APD is not a distinct legal entity and is merely an arm of the City. *See McClain v. City of Carrollton Police Dep't*, 361 Ga. App. 496, 497–98, 863 S.E.2d 172, 173 (2021). The Northern District of Georgia has held the same. Shelby v. City of Atlanta, 578 F. Supp. 1368, 1370 (N.D. Ga. 1984) (a municipal police department is not subject to direct suit).

1

(the "APD Subpoena") (collectively, the "Subpoenas").[2]

Of note, Defense Counsel has represented that it served the Movants with both Subpoenas on or around August 22, 2022.[3] Dkt. No. 127 at 1. While Movant contests this, even if service was attempted on August 22, 2022, Rule 17(c) subpoenas cannot be served via certified mail. *See* Fed. R. Crim. P. 17(d). Even if Rule 17(c) subpoenas could be served via certified mail, Defendant mailed the Subpoenas to the wrong location. The Subpoenas were mailed to the City's Department of Finance, located at 55 Trinity Ave SW, Suite 1350A, Atlanta, GA 30303, not the Department of Law, located in Suite 5000. The Department of Finance is not authorized to accept service on behalf of the City or any of its many departments, including APD. Though in receipt of both Subpoenas—one via email and one via certified mail—the Movants have not expressly waived service of the Subpoenas. To the contrary, Movants have repeatedly asked to be properly served.

Nonetheless, in an effort to cooperate with Defendant, since becoming aware of the Subpoenas, the City Attorney's Office, along with Movants' Counsel, have engaged in extended negotiations with Defense Counsel, via telephone, video calls, and in writing to address the service issues, and, notwithstanding those, to bring the scope of Subpoenas' respective requests without the bounds of Rule 17.[4] Despite

---

[2] The Subpoenas are attached to the Motion at **Exhibits A** and **B**, respectfully.

[3] Purported City of Atlanta Subpoena attached as **Exhibit C**.

[4] Pursuant to Local Rule 7.4, the City has not attached communications between

these efforts, Defendant and Movants have been unable to reach an agreement and resolution, thus necessitating the accompanying Motion to Quash.

## II.    BACKGROUND

### A.    The Underlying Indictment

Defendant was the City's Chief Financial Officer ("CFO") from November 2011 to May 2018. *See* Dkt. No. 1, ¶ 4. The Grand Jury for the Northern District of Georgia indicted Defendant on September 15, 2020, for alleged criminal conduct committed by him while serving in his capacity as the City's CFO. *See generally* Dkt. No. 1. The Indictment charges Defendant with (i) Wire Fraud, for conduct that occurred between August 2013 and March 2018 (Counts 1-3); (ii) Federal Program Theft, for conduct that occurred between July 2015 and July 2017 (Count 4-5); (iii) Possession of a Machinegun, for conduct that occurred in March 2017 (Count 6); (iv) False Entry on an Application or Record, for conduct that occurred in April 2016 (Count 7), and (v) Obstructing Internal Revenue Laws for conduct that occurred between March 2015 and 2016 (Count 8). *See generally* Dkt. No. 1. In addition, the Government included specific "examples" of Defendant's conduct evidencing the manner and means by which he allegedly defrauded the City. Dkt. No. 1, ¶ 13. That

Movants' Counsel or the City Attorney's Office and Defense Counsel. ("Counsel shall not provide the Court with copies of correspondence among themselves related to matters in dispute"). All correspondence referenced in Movants' motion are available for the Court's review upon request.

conduct occurred between November 2013 and March 2017, including the soliciting and purchasing of two machineguns between December 2015 and March 2016. Dkt. No. 1, ¶ 13.d.

### B.    Representations about Discovery

This case has proceeded with the parties representing that the discovery produced to Defendant to date has been quite voluminous, both in terms of what the Government has produced to him and what he has obtained through other means, such as public record requests to the City. The following document entries discuss the discovery in this case, which included *at least* 100GB of data, plus another 11.2 million pages of documents, from sources such as the City of Atlanta, Defendant's email accounts, Defendant's bank records, and more. *See*, *e.g.*, Dkt. Nos. 10, 12, 15, 20, 24, 34, 38, 40, 51, 88, 91, 95, 98, 101, 101-2, 101-3, 102, 103, 104, 118, 119. Moreover, Defendant has had nearly four years to review this discovery. *See*, *e.g.*, Dkt. No. 51 at 1, 7-8, 12. Given the breadth of the discovery produced to Defendant—which Movants understand is comprised predominately of documents the government obtained from Movants through subpoenas, search warrants, and open records requests—it is difficult for Movants to understand the Defendant's apparent position that Movants *still* have documents he does not already possess.

### C.     The Subpoena Requests

Neither the City Subpoena nor the APD Subpoena contain definitions, instructions, or other information to guide Movants search for the documents requested therein. Indeed, the only instruction in either Subpoena is to provide the requested documents by "remote means" to Defense Counsel within "30 Days." *See* Exs. A, B.

The City Subpoena requests the following documents:

[1.]    All emails sent to or from Mr. Beard's [C]ity of Atlanta email address from March 2013 to August 2018.

[2.]    Documents, notes, or communications related to any checks written or payments made by Mr. Beard to the City of Atlanta from March 2013 to August 2018.

[3.]    All documents, notes, communications, recordings, and papers related to the audit conducted by Windham Brannon in August 2019 through June 2021.

[4.]    All communications between the City of Atlanta, including but not limited to Amanda Noble, and any representative, agent, or employee of Windham Brannan related to the Windham Brannon audit in August 2019 through June 2021.

Ex. A, at 7.

The APD Subpoena requests the following documents:

[1.]    All communications between members of APD and Jim Beard from March 2013 to August 2018 regarding the acquisition of weapons for the Mayor's Executive Protection Detail and/or SWAT.

[2.]    All documents, notes, papers, recordings, and communications

concerning the requisition of 5.56 millimeter rifles.

[3.]   All documents, notes, papers, recordings, photographs, phone records, and communications regarding the two Daniel Defense rifles taken to APD Found Property on or about March 14, 2019.

Ex. B, at 5.

### D.   Service of the Subpoenas

Defense Counsel has represented to Movants that on or around February 3, 2022, Defendant served the City Subpoena upon the City. To date, the City has no reliable records indicating it was served on or around that date, let alone by the means required by Federal Rule of Criminal Procedure 17(d). *See* Ex. A.

On May 5, 2023, Defense Counsel emailed the City Subpoena to the City Attorney's Office, along with a transmittal letter dated February 3, 2022, stating, "[C]an we have a call to discuss the subpoena directed to the City of Atlanta (as opposed to APD)? I don't think we ever had any conversations about it, but it is attached here for reference." The email did not include any information indicating whether the subpoena had been properly served upon the City.

On July 18, 2023, the City Attorney's office reiterated to Defense Counsel that it still did not have any records that it was properly served with the City Subpoena. In response, Defense Counsel attached what it purported to be proof of delivery of the City Subpoena on July 22, 2022. Notably, this package of documents

(the "Purported City Subpoena) is not the City Subpoena conveyed on May 5, 2023.[5]

First, the letter associated with the Purported Subpoena is dated August 17, 2022, not February 3, 2022. Second, the address on the letter includes "Suite 1350A" in the fourth line of the address.[6] No such suite number is provided in the letter accompanying the City Subpoena. Third, the USM-285 Form contained in the City Subpoena package is not included in the Purported City Subpoena package. In the email chain attaching the Purported Subpoena, Defense Counsel provided U.S.P.S. tracking number 70192970000040556070, showing delivery of a package on August 22, 2022. Notably, August 22, 2022, is the same date upon which the APD received its Subpoena via certified mail.

Given the City's service concerns regarding the two Subpoenas, starting in July 2023 and lasting through the present, the City Attorney's Office and Counsel for Movants have repeatedly asked Defense Counsel to issue and serve a new subpoena consolidating the requests in the APD Subpoena and the City Subpoena, with the promise of accepting service of the same. To date, Defense Counsel has refused to revise his Rule 17(c) subpoenas or serve them properly upon Movants.

Nonetheless, to date, Movants have attempted to engage in good faith

---

[5] Compare the City Subpoena, **Exhibit A**, with the Purported City Subpoena, **Exhibit C**.

[6] Suite 1350A is the City Department of Finance. The Department of Law is Suite 5000.

discussions with Defense Counsel, through both the City Attorney's Office and Movants' Counsel to narrow the scope of both Subpoenas; however, Defense Counsel has refused to substantively engage in those conversations. Defense Counsel now represents that a continuance of Defendant's trial is needed, in part, because Movants have not produced the entirety of the documents requested in the Subpoenas. *See* Dkt. No. 127. Defense Counsel represents that only a complete compliance with the entirety of the requests made in the Subpoenas is sufficient to protect Defendant's due process rights. Nothing in the record indicates that to be the case. Of note, on April 17, 2023, the City produced 3,775 emails responsive to the APD subpoena, despite it not being properly served.

## II.   IMPROPER SERVICE

Federal Rule of Criminal Procedure 17(d) provides the only proper method of serving a Rule 17(c) subpoena: personal service. "A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance." Fed. R. Crim. P. 17(d). Rule 17 provides no exceptions; personal service is the *only* way to serve a Rule 17(c) subpoena. *Id.*; *see also United States v. Simmons*, 515 F. Supp. 3d 1359, 1362 (M.D. Ga. 2021) ("The Federal Rules of Criminal Procedure require that subpoenas be served personally, and Rule 17 provides no exceptions."). Although

the Eleventh Circuit has not addressed whether service can be made in other formats, other courts in this district have concluded that service must be made in-person. *See*, *e.g.*, *United States v. Scott*, No. CR417-050, 2018 WL 2182290 at *2 (S.D. Ga. May 9, 2018) ("[I]t is clear that service by email is ineffective."); *United States v. Johnson*, No. 06-0049, 2006 WL 8445302 at *1 (S.D. Ala. June 28, 2006) ("Rule 17 requires personal service of a criminal subpoena.... There is no provision for service by certified mail in the criminal rules.").

Here, Defendant served APD via certified mail. Defendant contends he served the City via certified mail, too, although the City has no concrete, reliable evidence to that effect. Defendant also attempted service via email. The law is clear: neither service by certified mail nor email will not do. *Scott*, 2018 WL 2182290 at *2 (service by email is ineffective"); *Johnson*, 2006 WL 8445302 at *1 ("There is no provision for service by certified mail in the criminal rules."). Despite Movants' repeated request to be properly served with the Subpoenas, Defendant has refused to do so.

Accordingly, Movants request that this Court compel Defendant to properly serve them with a subpoena pursuant to Rule 17(d). That said, this Court is not required to engage in futile efforts, and ordering the Defendant to properly serve the Subpoenas would indeed be futile, because the Subpoenas, as drafted, do not comply with the fundamental requirements of Rule 17. As such, the proper, and Movants

preferred remedy, is to quash both Subpoenas in their entirety.

## III.   THE SUBPOENAS SHOULD BE QUASHED IN THEIR ENTIRETY.

### A.   Standard of Review

"Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." *United States v. Simmons*, 515 F. Supp. 3d 1359, 1364 (M.D. Ga. 2021) (quoting *United States v. Nixon*, 418 U.S. 683, 702 (1974)).

### B.   Legal Standards

Once a subpoena is authorized by the Court, Rule 17(c)(2) allows a non-party to move to quash a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). The Court "must reconsider the Nixon standard in determining whether compliance with the subpoena would be unreasonable or oppressive." *United States v. Thompson*, 310 F.R.D. 542, 545 (S.D. Fla. 2015) (quotation and citation omitted).

The *Nixon* standard is as follows:

> (1) that the documents are evidentiary [ ] and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Nixon*, 418 U.S. at 699-700 (footnote omitted).

In addition, in *Nixon*, the Supreme Court identified three hurdles to clear for the subpoenaing party to meet its burden: "(1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700. Relevance requires the Court to assess whether the documents sought have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. If the documents are deemed relevant, the Court must then determine whether they would be admissible. This inquiry is largely governed by the Federal Rules of Evidence. *See*, *e.g.*, Fed. R. Evid. 401-415, 801-807. Under these Rules, documents sought pursuant to a Rule 17(c) subpoena can be deemed admissible for a variety of purposes, including impeachment. Admittedly, it is difficult pretrial to determine with precision the admissibility of certain documents. "[T]herefore, if a document is arguably relevant and admissible under the Rules of Evidence, the *Nixon* 'evidentiary' requirement is likely satisfied." *United States v. Zahn*, No. 3:22-CR-23-BJD-MCR, 2022 WL 17811346, at *6 (M.D. Fla. Dec. 19, 2022).

In addition to seeking documents that are both relevant and admissible, a Rule 17(c) subpoena must also be specific. Although the Supreme Court in *Nixon* requires that a party issuing a Rule 17(c) subpoena identify with specificity the documents being sought, the Court recognized that in some instances it may be impossible to

describe those documents "fully." *Nixon*, 418 U.S. at 700. As such the specificity requirement is met "if there is a 'sufficient likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *Id*. (citations omitted). In other words, while specificity is required, "exquisite specificity" is not. *United States v. Poindexter*, 727 F. Supp. 1501, 1510 (D.D.C. 1989).

Nonetheless, courts will not approve a subpoena for documents based upon requests for disclosure from broad categories of documents. *United States v. North*, 708 F. Supp. 402, 404 (D.D.C. 1989). In fact, "[i]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991). The specificity requirement ensures that a Rule 17(c) subpoena will not be used as a "fishing expedition." *United States v. King*, 164 F.R.D. 542, 545 (D. Kan. 1996) (citing *Noriega*, 764 F. Supp. at 1493); see also *United States v. Libby*, 432 F. Supp. 2d 26, 31-32 (D.D.C. 2006) ("[O]ne of the major purposes of the specificity requirement is to provide the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility."); *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) (holding that the "specificity and

relevance elements require more than the title of a document and conjecture as to its contents.").

Notably, a subpoena issued under Rule 17(c) is not intended as a discovery device. *Nixon*, 418 U.S. at 698-99 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). Rather, "its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Id.*; *see also United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984) (recognizing that Rule 17(c) "was not intended to provide an additional means of discovery for any party in criminal cases").

### C.   Analysis

On December 13, 2021, Defendant filed an unopposed motion for an Order from this Court authorizing the issuance of Rule 17(c) subpoenas to Movants, among other entities. To justify the need for the subpoenas, Defendant summarily stated:

> These records are material and necessary for Mr. Beard to prepare and present its [sic] case at trial. These records also are admissible, and the request included in the subpoena included adequate specificity. Attorneys for the government have been contacted and the government has stated that it does not oppose this request.

(Dkt. No. 42 at 2). Based on Movants review of the public filings in this matter, Defendant presented nothing to the Court to substantiate these self-serving, conclusory statements. For example, nothing in the record indicates Defendant submitted the exhibits to his Rule 17(c) subpoenas to the City and APD to the Court

for review and authorization.

As such, the City Subpoena requests the production of the following documents:

[1.]  All emails sent to or from Mr. Beard's [C]ity of Atlanta email address from March 2013 to August 2018.

[2.]  Documents, notes, or communications related to any checks written or payments made by Mr. Beard to the City of Atlanta from March 2013 to August 2018.

[3.]  All documents, notes, communications, recordings, and paper related to the audit conducted by Windham Brannon in August 2019 through June 2021.

[4.]  All communications between the City of Atlanta, including but not limited to Amanda Noble, and any representative, agent, or employee of Windham Brannan related to the Windham Brannon audit in August 2019 through June 2021.

Ex. A, at 7.

The APD Subpoena requests the production of the following documents:

[1.]  All communications between members of APD and Jim Beard from March 2013 to August 2018 regarding the acquisition of weapons for the Mayor's Executive Protection Detail and/or SWAT.

[2.]  All documents, notes, papers, recordings, and communications concerning the requisition of 5.56 millimeter rifles.

[3.]  All documents, notes, papers, recordings, photographs, phone records, and communications regarding the two Daniel Defense rifles taken to APD Found Property on or about March 14, 2019.

Ex. B, at 5.

Such language does not comport with the *Nixon* standards. Instead, the requests indicate an attempt by Defendant to engage in his own discovery. Taken together with Defense Counsel's refusal to compromise on this language—despite some of the requests being moot—it appears the Subpoenas were designed not to expedite trial, but to delay it. As such, this Court should quash the Subpoenas.

### 1.    The subpoenaed documents are not relevant, admissible, or specific.

The City Subpoena request for "[a]ll emails sent to or from Mr. Beard's [C]ity of Atlanta email address from March 2013 to August 2018," is facially overbroad. *See* Ex. A. It requests all of Defendant's emails, sent or received, in his official capacity as CFO of the City regardless of their relevance to the underlying alleged criminal conduct. Complying with this request, as drafted, demands the production of hundreds of thousands of irrelevant, inadmissible emails. "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *Noriega*, 764 F. Supp. at 1493. Here, it appears Defendant is *hoping to find* something useful in the documents requested; however, only a request for something *he know* will be useful, or at least admissible, complies with this *Nixon* standard.

For these same reasons, the City Subpoena's second request also fails to meet the *Nixon* standard. There Defendant requests "[d]ocuments, notes, or

communications related to any checks written or payments made by Mr. Beard to the City of Atlanta from March 2013 to August 2018." *See* Ex. A. Again, this request demands the production of all items related to any payments, by check or otherwise, from Beard to the City, regardless of any connection such payments may have to any of the alleged underlying criminal conduct. As such, it requests predominately irrelevant, inadmissible documents, in the hopes of catching the stray useful document therein. Such a request is impermissible under *Nixon.*

Defendant's impermissible requests do not stop there. The requests made in the APD Subpoena also suffer the same fatal flaw. *See* Ex. B. There, for example, the Defendant asks for "[a]ll communications between members of the APD and Jim Beard from March 2013 to August 2018 regarding the requisition of weapons for the Mayor's Executive Protection Detail and/or SWAT," despite the only weapons-related offenses alleged in the Indictment occurring during discrete months between 2015 and 2017. Moreover, there is no indication, and Defendant has made no showing, that any communications exist between Beard and APD about any weapons whatsoever, let alone the ones at issue in this case. For example, there is nothing in the public record of this case to indicate that the weapons at issue in this matter relate, in any way, to "the Mayor's Executive Protection Detail and/or Swat." *Id.* Similarly, the APD subpoena requests, "[a]ll documents, notes, papers, recordings, and communications concerning the requisition of 5.56 millimeter

rifles," regardless of whether the rifles are the two specific rifles at issue in Mr. Beard's case. This too is overbroad.

Logic and common-sense point in only one direction: Defendant's Rule 17(c) subpoenas are not in the pursuit of specific information; they are in pursuit of something, anything, helpful to his case that all the other discovery in this case—millions and millions of documents—missed. This is an improper use of Rule 17(c) subpoenas and does not meet the *Nixon* standard. *See North*, 708 F. Supp. at 404.

> **2.    The requested documents are reasonably procurable, and have been reasonably procured, through other means in advance of trial by Defendant's exercise of due diligence.**

Upon information and belief, the documents requested in the Subpoenas are already in Plaintiff's possession. The Government began producing documents to Defendant in October 2020. Those initial productions, made pursuant to Rule 16, contained "more than 100 GB of data." *See*, *e.g.*, Dkt. Nos. 20 at 2, 34 at 1. The documents contained within those 100 GB—which the Government represented were organized "in a manner to facilitate examination"—include, *inter alia*:

> Department of Finance records about the Defendant's use of his COA credit card, credit card statements detailing every expenditure made by the Defendant during the period covered by Counts 1 through 5; the Defendant's personal bank account statements…, the Defendant's COA work email and calendar, his travel records, hotel bills, and conference attendance records.

Dkt. No. 51 at 7.

In other words, according to representations the parties in this matter have

made to this Court, Defendant is already in receipt of what he now requests from the City: (1) his emails (City Request #1) and (2) his bank records, i.e., records evidencing any payments Defendant made to the city, particularly those made by check (City Request #2). In addition, based on the representations made to this Court throughout this matter, the Government's production seemly also includes documents responsive to APD Subpoena requests 1 through 3, including: any relevant communications between Beard and the APD (APD Request #1), any relevant communications concerning the requisition of 5.56 millimeter rifles (APD Request #2), and (3) any relevant communications regarding the two Daniel defense rifles taken to APD Found Property (APD Request #3), plus any attachments to those communications.

Again, the Defendant has been given access to 100 GB of Government discovery. That discovery was derived, in part, from subpoenas and open record requests to the City. Defendant has received at least five continuances to review that material. *See*, *e.g.*, Dkt. Nos. 20, 24, 32, 34, 40; *see also* Dkt. No. 51, at 2 ("[T]he Defendant has been provided with extensive discovery materials that he has had more than a year to review."); Dkt. No. 51, at 7 ("The United States provided voluminous Rule 16 materials to the Defendant, which includes discovery that supports the allegations in paragraphs 1 through 18, (i.e., Counts 1 through 5)."); Dkt. No. 101 at 19-20 ("The government has provided approximately 900,700 pages

of documents, including bank records from various financial institutions, comprising thousands of transactions over several years."). In addition, the Government has also made available to Defendant another 11.2 million pages of "other" (i.e., <u>additional</u>) City of Atlanta documents for his review, despite those documents not being directly relevant to his case. *See, e.g.*, Dkt. No. 119 at 2-3. Now, Defendant seeks this very same materials directly from the City. Such attempts at independent discovery are not an appropriate use of Rule 17(c) subpoenas. *Silverman*, 745 F.2d at 1397.

Moreover, Defendant has yet to show, through motions or through discussions with the City Attorney's Office or Movants' counsel, what, exactly, he is looking for from the City or the APD that he does not already have. To the contrary, what Defendant has shown, based on a review of the filings in this case, is that on September 5, 2019, more than three-and-a-half years ago, the City produced *everything* Defendant now seeks through the Subpoenas. *See* Dkt. No. 101-2, Dkt. No. 101-3.   On June 17, 2019, Defendant's counsel requested from the City, *inter alia*, the following documents:

(1)   All personnel, employment[,] compensation, disciplinary history, and ethics/ethics training records for [Defendant];[7]

…

(3)   All City of Atlanta Financial Disclosures Statements, Requests for Permission to Perform Outside Employment Forms, and

---

[7] The City produced these records, again, to Defendant as recently as March 26, 2024.

Ethics Pledge completed by or associated with [Defendant];

…

(5)     All records related to or associated with any and all firearms and equipment assigned to [Defendant];

(6)     All records related to Invoice Numbers JAB02112014 and 012216, and the expenditure records associated with the listed invoice records;

(7)     From July 10, 2010, to May 15, 2018, all emails (including attachments) sent or received by [Defendant's] City of Atlanta email account;

(8)     From July 10, 2010, to May 15, 2018, all records related to City of Atlanta travel and reimbursements for [Defendant];

(9)     All travel logs for executive protection for the period of [Defendant's] employment (July 10, 2010 through May 15, 2018) evidencing any events in which [Defendant] and at least one member of executive protection was present;

(10)    All emails or other communications sent or received by any City of Atlanta employee or representative related to [Defendant]; [and]

(11)    All documents previously produced by the City of Atlanta to any third party, including but not limited to federal, state, or local government agencies…

…

Dkt. No. 101, at 3-4.

On September 5, 2019, the City Attorney's Office responded to Defendant's with a production of documents, or by stating that such documents had already been provided to Defendant. Specifically, the City told Defendant:

First, with respect to Requests 1, 3, 4, 5, 6, 7, 8, 10, and 11, the City has provided all responsive, non-exempt records within its custody or control that it has been able to locate after diligent search. The City is currently aware of no additional responsive, non-exempt records.

. . .

Third, as to request [11],[8] the City has provided you access to all the same records that were provided to any of the specified law enforcement agencies . . . or their representatives concerning [Defendant]. The records provided in response to request made under the Georgia Open Records Act ("GORA") were subject to redaction [for privilege or the protection of personal identity] . . .

Dkt. No. 101-3, at 2.

Accordingly, based on the very filings and representations the Defendant has made to this Court, he is already in possession, through his own due diligence, before trial, of the very documents he now seeks through City Subpoena requests 1 and 2 and APD Subpoena requests 1, 2, and 3.

In addition, as it relates to the Windham Brannon audit report regarding Defendant's alleged criminal conduct, that report was provided to Defendant, along with citations to the documents the report relied upon. *See* Dkt. No. 101-6. Thus, he is also already in possession of the documents requested in City Subpoena requests 3 and 4. As such, there is likely nothing left to produce to Defendant that he does not already possess. If such documents do exist, Defendant certainly has not made

---

[8] The original paragraph addresses "request 12"; however, it is clear from the context that this is a typographical error. The City's response here is in reference request 11.

Movants aware of what they are with any level of specificity. Since Defendant is likely already in possession of the very documents sought through the Subpoenas, he fails to meet the second element of the *Nixon* standard. As such, the Subpoenas should be quashed.

> **3.     Defendant has made no showing that without the City's compliance with the Subpoena he cannot properly prepare for trial, or that failure to obtain such documents may unreasonably delay trial.**

Based on the representations made by both parties to this Court in their respective motions practice, it is hard to conceive, what, if any, documents the City retains that the Defendant does not already have (as argued above). Indeed, Defendant has made no showing whatsoever that he does not have the documents necessary to properly prepare for trial. Instead, the public filings in this case only show Defendant's self-serving, conclusory statements to that effect. *See*, *e.g.*, Dkt. Nos. 42 at 2, 127 at 6.

Contrary to Defendant's own statements about his need for all documents requested in the Subpoenas, at least two of the City Subpoena requests revolve around a moot point. Yet, Defendant still refuses to revise or narrow the scope of the City Subpoena. Through the City Subpoena, Defendant seeks (1) "All documents, notes, communications, recordings, and papers related to the audit conducted by Windham Brannon in August 2019 through June 2021" (Request #3) and (2) "All communications between the City of Atlanta, including but not limited to Amanda

Noble, and any representative, agent, or employee of Windham Brannon related to the Windham Brannon audit in August 2019 through June 2021" (Request #3). *See* Ex. A.

As of this very week, Defendant maintains that he still needs these documents as part of his defense, despite knowing that the Government does not intend to introduce anything related to those documents during trial. *See* Dkt. No. 106 at 8. Ironically, Defendant learned this as he attempted to exclude these very same documents from being admitted at trial. *See* Dkt. No. 101. Defendant has yet to answer why he is seeking documents from the City that he has already reviewed, and based on that review, wishes to keep from the jury.

Regardless, two days ago, March 27, 2024, this Court denied Defendant's request to exclude documents related to the Windham Brannon audit, including the report itself, as moot, because the government does not intend to present any evidence related to the audit at trial. Dkt. No. 128, at 16. It does not stand to reason why Defendant is *still* seeking documents related to an audit that will forever remain unknown to the jury unless *he* opens the door. To put simply, City Requests 3 and 4 are now moot points and should be treated as such. The requested documents, according to the filings in this case, are not needed for Defendant to prepare for trial, and yet he continues to insist they are necessary and that he cannot properly prepare for trial without them.

The "chief innovation" of Rule 17(c) subpoenas is to "expedite the trial." *Nixon*, 418 U.S. at 698-99. They are not "intended to provide an additional means of discovery for any party in criminal cases." *Silverman*, 745 F.2d at 1397. Instead of striving to this end, it appears that Defendant is now relying on the issuance of flawed, unserved Rule 17(c) Subpoenas, coupled his unwillingness to amend them to meet the realities of the case—to delay trial, not expedite it. As such, the Subpoenas fail the third element of the *Nixon* standard and must be quashed.

**4.      The Subpoenas appear to be a fishing expedition.**

For all the reasons set forth above and based on a review of the public filings in this case, it appears Defendant is enjoying a fishing expedition. At best, he is seeking documents from the City and APD, not to gain new information, but to corroborate what he already knows, hoping along the way that he will find something useful. This he cannot do. *See Noriega*, 764 F. Supp. at 1493; *Libby*, 432 F. Supp. 2d at 31-32 (D.D.C. 2006). As such, the Subpoenas fail the fourth and final element of the *Nixon* standard. They must be quashed.

**IV.    CONCLUSION**

For the above reasons, the APD and City Subpoenas are fatally flawed (and never properly served). They seek impermissible pre-trial discovery and appear to be little more than a fishing expedition in violation of Rule 17(c). As such, they should be quashed in their entirety. In the alternative, the City requests that this Court

compel Defendant to modify and re-serve the Subpoenas to bring them in accordance with Rule 17(c) and Rule 17(d). Should the Court find that the Subpoenas are improper, and issued beyond the bounds of Rule 17(c), then City requests leave of Court to seek the payment of its fees in opposing the improper Subpoenas.

*[Signature of Counsel appears on next page]*

Respectfully submitted this the 29th day of March, 2024.

WOMBLE BOND DICKINSON (US) LLP

 /s/ *Joe D. Whitley*
Joe D. Whitley
Georgia Bar No. 756150
1331 Spring Street NW
Suite 1400
Atlanta, Georgia 30309
Phone: (404) 888-7350
Email: Joe.Whitley@wbd-us.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **BRIEF IN SUPPORT OF MOTION TO QUASH DEFENDANT'S RULE 17(c) SUBPOENAS TO CITY OF ATLANTA AND ATLANTA POLICE DEPARTMENT** has been served electronically by emailing a copy of same to the following attorneys of record:

> Scott R. Grubman, Esq.
> Chilivis Grubman
> 1834 Independence Square
> Atlanta, Georgia 30338
> sgrubman@cglawfirm.com
>
> Garrett L. Bradford
> Office of the United States Attorney
> Northern District of Georgia
> 600 United States Courthouse
> 75 Ted Turner Dr., S.W.
> Atlanta, GA 30303
> Email: garrett.bradford@usdoj.gov

This the 29th day of March, 2024.

> WOMBLE BOND DICKINSON (US) LLP
>
> /s/ *Joe D. Whitley*
> Joe D. Whitley
> Georgia Bar No. 756150
> 1331 Spring Street NW
> Suite 1400
> Atlanta, Georgia 30309
> Phone: (404) 888-7350
> Email: Joe.Whitley@wbd-us.com